**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PageMasters, Inc., | ) |
| Plaintiff, | ) No. CIV 05-1519-PHX RCB |
| vs. | ) O R D E R |
| Océ-Technologies, B.V., | ) |
| Defendant. | ) |

On March 23, 2006, the court, *inter alia*, granted defendant, Océ-Technologies B.V.'s ("Océ") motion for summary judgment. <u>PageMasters, Inc. v. Océ-Technologies B.V.</u>, 2006 WL 753164 (D.Ariz. 2006) ("<u>PageMasters</u>") (doc. 34). Currently pending before the court is a motion pursuant to Fed. R. Civ. P. 60 by plaintiff, PageMasters, Inc., for relief from that order and the judgment entered thereon (doc. 35).

Finding oral argument unnecessary, the court denies plaintiff's request in this regard (doc. 52) and rules as follows.

### ***Background***

The court assumes familiarity with all prior proceedings and

orders in this action, as well as in the related action, <u>Océ-Technologies, B.V. v. PageMasters, Inc.</u>, No. CIV 04-0557 PHX RCB. To place the present motion in context, however, several aspects of <u>PageMasters</u> bear repeating.  There is no dispute that in January 1997, the parties entered into a Distribution Agreement. <u>PageMasters</u>, 2006 WL 753164, at *2.  Likewise, the parties "concede[d]" that three years after entering into that Distribution Agreement "PageMasters entered into [an] Asset Purchase Agreement that assigned essentially all of [its] assets, including the Distribution Agreement, to Buzzsaw." <u>Id.</u>  The narrow issue before the court in <u>PageMasters</u> was "whether PageMasters, in th[at] Asset Purchase Agreement, reserved a right to audit Océ or assigned such a right away to Buzzsaw." <u>Id.</u>

Agreeing with Océ that "'all' means all[,]"[1] this court held that when PageMasters "assign[ed] 'all' agreements, rights and obligations created under the Distribution Agreement to Buzzsaw[,]" that "includ[ed] the right to conduct the 'single' audit to collect any remaining royalty payments due to PageMasters." <u>Id.</u> at *3 and *4 (citation omitted).  Thus, the court concluded that "under the language of the Asset Purchase Agreement PageMasters did not retain a right to independently audit or collect royalties from Océ." <u>Id.</u> at *4.  Implicitly then, the court adopted Océ's argument that PageMasters lacked standing to assert any rights under the Distribution Agreement because it had assigned those rights to Buzzsaw.  <u>See</u> <u>id.</u> at *5.  Because PageMasters did not have standing, the court found no need to address Océ's alternative

---

[1]     <u>Knott v. McDonald's Corp.</u>, 147 F.3d 1065, 1067 (9th Cir. 1998).

- 2 -

argument that PageMasters' claims are time barred.  Id.

Approximately six weeks after the issuance of that decision, PageMasters contacted Autodesk, Inc., as the successor in interest to Buzzsaw.  PageMasters explained that in its view after the PageMasters decision it became "Autodesk's . . . responsibility to demand and conduct the audit, to invoice any A/R [accounts receivable] due and owing to PageMasters and to collect said A/R from Oce."  McKee Aff., exh. 3 thereto (doc. 45-2, at 33) (emphasis in original).  PageMasters therefore "demand[ed]" that Autodesk conduct such an audit of Océ.  Id.  For several months after that initial "demand," PageMasters and Autodesk discussed the audit issue.  Id. at 4, ¶ 9.

Finally, on October 6, 2006, Autodesk informed PageMasters of two transactions which from Autodesk's standpoint relieved it of any audit responsibilities it *may* have owed to PageMasters.  The first transaction is "a Software OEM Distribution Agreement dated October 1, 2000 (the '2000 Distribution Agreement')" between Buzzsaw and Océ.  McKee Aff., exh. 5 thereto at 1 (doc. 45-2 at 38).  According to Autodesk, "[b]y its terms the 2000 Distribution Agreement replaced and superseded" the 1997 Distribution Agreement between PageMasters and Océ.  Id.  Thus, Autodesk took the position that "the audit clause contained in the 1997 Distribution Agreement," which PageMasters has been relying upon as the basis for its audit claim in this litigation, "was superseded by the audit clause contained in the 2000 Distribution Agreement[.]"  Id.

The second transaction which Autodesk referenced is a May 13, 2002 License and Option Agreement ("the License Agreement") between Buzzsaw and Océ.  After Buzzsaw became a wholly owned subsidiary of

Autodesk,[2] it entered into that Agreement with Océ "amending and replacing the 2000 Distribution Agreement." Id., exh. 5 thereto at 2 (doc. 45-2 at 39).  Under that 2002 License Agreement, "Océ acquired the option to purchase certain assets of Buzzsaw, including those relating to . . . PageMasters[.]" Id.  Autodesk explained however that "[n]o right of audit was provided for under the License . . . Agreement in the event that Océ elected to exercise its option to purchase[]" -- an option which Océ elected to exercise effective May 1, 2003.  Id.  "As a result of these transactions[,]" Autodesk informed PageMasters that "Autodesk no longer has a current right, if it ever did, to audit Océ's use of the PageMasters technology."  Id.

Asserting that Océ "never disclosed to PageMasters or [to] this Court . . . the fact that under the License . . . Agreement [Océ] acquired Autodesk's rights and assumed the responsibilities under the original Distribution Agreement between Océ and PageMasters[,]"[3] PageMasters maintains that it is entitled to relief from judgment.  Mot. (doc. 45) at 4 (citation omitted). PageMasters theorizes that the License Agreement constitutes "newly discovered evidence," and thus it is entitled to relief from judgment pursuant to Fed. R. Civ. P. 60(b)(2).  PageMasters further contends that "Océ[] repeated[ly], active[ly] and intentional[ly] conceal[ed] . . . the critical fact that [Océ] had acquired from

---

[2] "Buzzsaw has since been merged into Autodesk."  McKee Aff., exh. 5 thereto at 2, n.2 (doc. 45-2 at 39).

[3] The court emphasizes that this is PageMasters' interpretation of the License Agreement.  That Agreement is not part of the record on this motion however.  Therefore, the court does not have the benefit of knowing exactly what, if anything, that Agreement provides with respect to the original Distribution Agreement between PageMasters and Océ.

- 4 -

1  Autodesk its rights and responsibilities under the original . . .
2  Distribution Agreement[]" between PageMasters and Océ.  This
3  alleged conduct, from PageMasters' viewpoint, amounts to "fraud on
4  the Court and PageMasters[,]" and thus a basis for relief from
5  judgment under subsection (b)(3) of Rule 60.  Reply (doc. 51) at 7
6  and 8.  At the very least, PageMasters contends that Océ's "lack of
7  candor with the Court and violation of at least the spirit of
8  disclosure embodied in Rule 26 provide[]" grounds for relief under
9  Rule 60(b)(6).  Mot. (doc. 45) at 9.

### *Discussion*

### I.  *Fed. R. Civ. P. 60(b) - Governing Legal Standards*

Rule 60(b) enumerates six bases warranting "relief from judgment or order."  Fed. R. Civ. P. 60.  Such motions "are addressed to the sound discretion of the district court."  Singh v. Yellow Transp., Inc., 2007 WL 1795778, at *2 (E.D.Cal. June 21, 2007) (citing Casey v. Albertson's Inc., 362 F.3d 1254, 1257 (9th Cir. 2004)).  As just noted, PageMasters asserts that it is entitled to relief from judgment based upon subsections (2), (3), and (6) of Rule 60(b).  The court will address each in turn.

### A.  *Fed. R. Civ. P. 60(b)(2)*

Rule 60(b)(2) allows relief from judgment when there is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2). PageMasters contends that it is entitled to relief under this subsection because Océ "never disclosed . . . the fact that under the License . . . Agreement it acquired Autodesk's rights and assumed the responsibilities under the original Distribution Agreement between Oce and PageMasters."  Mot. (doc.

45) at 4 (citation omitted).  Thus, in PageMasters' view the License Agreement is "newly discovered evidence" warranting relief from judgment pursuant to Fed. R. Civ. P. 60(b)(2).

Océ responds that because PageMasters cannot show either that the assertedly "new evidence," in the form of the 2002 License Agreement, would "likely . . . change the" result here, or that PageMasters exercised "due diligence" to "discover" that evidence, the court should deny this aspect of PageMasters' motion for relief from judgment.  Resp. (doc. 48) at 7.

"Relief from final judgment on the basis of newly discovered evidence under Rule 60(b)(2) 'is warranted if (1) the moving party can show the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case.'" Immersion Corporation v. Sony Computer Entertainment America, Inc., 2006 WL 618599, at *15 (N.D.Cal. March 8, 2006) (emphasis added) (quoting, *inter alia*, Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003)), appeal dismissed, 2007 WL 930714 (Fed. Cir. March 8, 2007).

### *1.  "Newly Discovered Evidence"*

"Newly discovered evidence" for Rule 60(b)(2) purposes "requires that [it] not have been in the party's possession at the time of summary judgment *or* discoverable with reasonable diligence." Sanchez v. Corrections Corporation of America, 2007 WL 1390675, at *7 (E.D.Cal. May 9, 2007) (citing Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 211 (9th Cir. 1987))

- 6 -

1  (emphasis added).  The 2002 License Agreement which PageMasters now
2  claims is newly discovered evidence, clearly was not in
3  PageMasters' possession when Océ moved for summary judgment.  As
4  the record shows, PageMasters did not become aware of that
5  Agreement until October 6, 2006  - approximately six months after
6  the <u>PageMasters</u> decision.  <u>See</u> Aff. of Jeffrey A. McKee (Dec. 11,
7  2006) (doc. 45-2) at 4, ¶ 9.

8       The issue thus becomes whether PageMasters "exercised due
9  diligence to discover" the License Agreement.  <u>See</u> <u>Immersion</u>, 2006
10 WL 618599, at *15 (internal quotation marks and citation omitted).
11 This due diligence "inquiry 'looks not to what the litigant
12 actually discovered, but to what he or she *could* have discovered.'"
13 <u>International Center for Technology Assessment v. Leavitt</u>, 468
14 F.Supp.2d 200, 207 (D.D.C. Jan. 8, 2007) (quoting 12 FED. PRAC. 3d
15 § 60.42[5]) (emphasis in original) (other citation omitted).  Thus,
16 if PageMasters "could have discovered" the License Agreement by
17 exercising due diligence, by definition, that Agreement would not
18 be newly discovered evidence.  Hence, it could not form the basis
19 for relief under Rule 60(b)(2).

20      Applying that standard to the present case, in the exercise of
21 due diligence PageMasters "could have discovered" the License
22 Agreement.  PageMasters readily concedes that it "did not inquire
23 about or seek production" of documents such as the License
24 Agreement.  <u>See</u> Mot. (doc. 45) at 5 and 6.  PageMasters claims that
25 it did not pursue that type of discovery because it "could not
26 reasonably be expected to fathom that Oce had acquired such rights
27 when it was asserting that PageMasters had no right to an audit and
28 that if any party had a right to . . . an audit it would be

1  Autodesk (as successor to Buzzsaw)." Id. at 6.  In a similar vein,
2  PageMasters declares that it "did not contemplate making . . . a
3  request" for documents such as the License Agreement given "Oce's
4  argument that PageMasters did not retain any rights to perform an
5  audit[.]" Id. at 5.  The fact remains, however, that PageMasters
6  easily "could have" discovered the existence of the License
7  Agreement, but it did not.

8       Indeed, even without formal discovery, PageMasters could have
9  become aware of the 2002 License Agreement through a May 13, 2002,
10 press release detailing that Agreement.  See Resp. (doc. 48), exh.
11 A thereto at 1.  Further, according to Océ's Product Manager,
12 "since no later than July 29, 2005[,]" its website which is
13 "publicly accessible[]," outlined Océ's history, including the 2002
14 License Agreement.  Id., exh. B thereto (Decl'n of Timothy Moore).
15 Based upon that press release and website, Océ asserts that the
16 2002 License Agreement was "publicly available information" and
17 thus "easily ascertainable with [the] exercise of . . . due
18 diligence[]" by PageMasters.  Id. at 9.

19      Not only that, because the License Agreement was "[p]ublicly
20 available" through the press release and Océ's website, Océ further
21 maintains that that Agreement "cannot constitute newly discovered
22 evidence."  See  Leavitt, 468 F.Supp.2d at 207 (citing, *inter alia*,
23 Scutieri v. Paige, 808 F.2d 785, 794 (11th Cir. 1987)).
24 Accordingly, the court should deny PageMasters' motion for relief
25 under Rule 60(b)(2).

26      Océ's argument is persuasive.  First of all, the License
27 Agreement is not "newly discovered evidence" as that phrase is used
28 in Rule 60(b)(2) because it was publicly available.  Second, even

- 8 -

if the License Agreement was not publicly available because it was, as PageMasters puts it, mentioned in "an obscure press release[,]" as set forth above, that Agreement readily could have been discovered with due diligence. See Reply (doc. 51) at 6.

Evidently PageMasters realizes this because in its Reply PageMasters notes "that a new trial may be granted *even though* proper diligence was not used if this is necessary to prevent a manifest miscarriage of justice." Id. at 4 (citation omitted) (emphasis added). PageMasters overlooks the fact, however, that this is a "narrow exception" and "has been restricted to cases in which the evidence is practically conclusive." Ope Shipping, Ltd. v. Underwriters at Lloyds, 100 F.R.D. 428, 432 (S.D.N.Y. 1983) (citation omitted). "In short, the evidence must make a 'prima facie showing that a different result should have been reached initially.'" Id. (quoting Unarco Industries, Inc. v. Evans Products, Co., 403 F.2d 638, 639 (7th Cir. 1968)). As more fully explained below, PageMasters is not entitled to invoke this "narrow exception" to the due diligence requirement because the License Agreement is not "practically conclusive." See id. In fact, given the unequivocal nature of the assignment in the Asset Purchase Agreement, it is difficult to see how any subsequent transactions could impact that assignment.

### *2. Changed Outcome*

Even if the court agreed with PageMasters that the License Agreement qualifies as "newly discovered evidence" within the meaning of Rule 60(b)(2), nonetheless, it would deny PageMasters''s motion for relief thereunder. Relief from judgment pursuant to that Rule is not proper because PageMasters has not met its burden

1  of showing that the License Agreement is "of such magnitude that
2  production of it earlier would have been likely to change the
3  disposition of the case."  See Immersion, 2006 WL 618599, at *15
4  (internal quotation marks and citations omitted).

5       In PageMasters, this court reiterated its earlier holding that
6  "the language of the Asset Purchase Agreement 'clearly and
7  unequivocally assign[ed] to Buzzsaw all rights and responsibilities
8  created by the Distribution Agreement.'" PageMasters, 2006 WL
9  753164, at *3 (quoting Océ-Technologies B.V. v. PageMasters, Inc.,
10 No. CIV 04-0557 PHX RCB, Order (doc. 35) at 7).  Buzzsaw's
11 subsequent disposition of its rights in the License Agreement does
12 not "undo" the original assignment made through the Asset Purchase
13 Agreement.  See Resp. (doc. 48) at 2.  Thus, PageMasters has not
14 met its burden of convincing the court that the License Agreement
15 "would have been likely to change the disposition of the case."[4]
16 See Immersion, 2006 WL 618599, at *15 (internal quotation marks and
17 citations omitted).

18      In sum, because PageMasters has not met any of the three
19 criteria justifying relief from judgment pursuant to Fed. R. Civ.
20 P. 60(b)(2), the court denies this aspect of PageMasters' motion.

21      ***B. Fed. R. Civ. P. 60(b)(3)***

22      PageMasters contends that Océ "misrepresented by [o]mission
23 the [e]xistence of the License . . . Agreement."  Mot. (Doc. 45) at
24 7.  Therefore, PageMasters also is relying upon Rule 60(b)(3),

---

[4] As previously noted, the License Agreement is not part of the record herein.  Thus, it would be sheer speculation for this court to find, as PageMasters so vigorously contends, that based upon that Agreement "Oce had the responsibility to perform and PageMasters had standing to demand, an audit for PageMasters benefit and thus Oce was required to pay PageMasters any accounts receivable resulting from the audit."  Reply (doc. 51) at 7 (emphasis in original).

- 10 -

which permits relief from judgment due to "fraud . . ., misrepresentation, or other misconduct of an adverse party[.]" Fed. R. Civ. P. 60(b)(3).[5]

To prevail on a motion brought pursuant to Rule 60(b)(3) "'the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense.'" Berry v. Hawaii Express Service, Inc., 2006 WL 1582430, at *1 (D.Hawaii June 5, 2006) (quoting DeSaracho v. Custom Food Mach. Inc., 206 F.3d 874, 880 (9th Cir. 2000)) (other citation omitted).  As the Ninth Circuit has made clear, "Rule 60(b)(3) 'is aimed at judgments which were unfairly obtained, not at those which are factually incorrect.'" Id. (quoting DeSaracho, 206 F.3d at 880) (citing, in turn, In re M/V Peacock, 809 F.3d 1403, 1405 (9th Cir. 1987)). Further, as with Rule 60(b)(2), there is a due diligence component to Rule 60(b)(3).  That Rule "require[s] that fraud . . . not be discoverable by due diligence before or during the proceedings." Casey, 362 F.3d at 1260 (internal quotation marks and citation omitted).

Océ is taking the position that PageMasters is not entitled to have the judgment set aside pursuant to Fed. R. Civ. P. 60(b)(3) because it has "proffer[ed] no evidence, let alone the clear and

---

[5] In its motion PageMasters invokes the "fraud upon the court" doctrine. See Mot. (doc. 45) at 7.  To make that argument, however, a party must institute a separate action.  Fed. R. Civ. P. 60(b) ("This rule does not limit the power of a court to entertain an independent action . . . to set aside a judgment for fraud upon the court.").  Obviously PageMasters has not commenced such an action.  Thus, the court declines to consider whether, as PageMasters suggests, Océ engaged in "fraud upon the court," as distinguished from fraud within the meaning of Rule 60(b)(3).

- 11 -

1 convincing evidence required[]" thereunder to show "that . . . the
2 judgment was obtained through fraud, misrepresentation or other
3 misconduct[.]" Resp. (doc. 48) at 10 (citation omitted).  Océ's
4 position is well taken.

5    Once again, PageMasters has not met its burden of showing that
6 it is entitled to relief from judgment.  And once again, part of
7 the reason for that failure is the fact that PageMasters did not
8 exercise due diligence.  PageMasters contends that Océ obtained
9 summary judgment in its favor as a result of fraud or
10 misrepresentation.  However, PageMasters has failed, as it must, to
11 prove either fraud or misrepresentation by clear and convincing
12 evidence.

13    In the context of the litigation as a whole, Océ's silence as
14 to the 2002 License Agreement does not amount to fraud or
15 misrepresentation.  PageMasters' admission that it never sought
16 discovery in this regard significantly undermines its argument that
17 Océ engaged in fraud or misrepresentation.  Furthermore, the Ninth
18 Circuit has held that "discovery recalcitrance does not constitute
19 fraud" for purposes of obtaining relief from judgment under Rule
20 60(b)(3).  Casey, 362 F.3d at 1260.  Surely if "discovery
21 recalcitrance" is insufficient to establish fraud within the
22 meaning of Rule 60(b)(3), silence when no discovery request was
23 made, nor any discovery obligation imposed under the Federal Rules,
24 cannot be deemed fraud.

25    Additionally, PageMasters has not shown by clear and
26 convincing evidence that the conduct complained of, *i.e.* not
27 revealing the existence of the 2002 License Agreement, "prevent[ed]
28 [it] from fully and fairly presenting" its case."  See id.

1  (citation omitted).  Given the broad scope of the assignment by
2  PageMasters, subsequent agreements, such as the License Agreement
3  (to which PageMasters was not a party) did not prevent PageMasters
4  from "fully and fairly presenting" its arguments.  At worst this
5  judgment was possibly "factually incorrect" because the License
6  Agreement was not part of the record.  That is an insufficient
7  basis, however, upon which to obtain relief from judgment under
8  Rule 60(b)(3).  See Berry, 2006 WL 1582430, at *1 (internal
9  quotation marks and citations omitted).  Accordingly, the court
10 denies this aspect of PageMasters' motion as well.

### C.  Fed. R. Civ. P. 60(b)(6) - "Any Other Reason"

Initially PageMasters mentioned subsection (b)(6) as another possible basis for this motion.  That catch-all provision of Rule 60(b) allows for relief from judgment for "any other reason[.]"  Fed. R. Civ. P. 60(b)(6).  PageMasters''s Reply does not mention Rule 60(b)(6) at all though.  Thus, the court assumes that PageMasters has correctly realized that Rule 60(b)(6) does not apply here.

The Ninth Circuit views "'[c]lause 60(b)(6) [a]s residual and . . . as being exclusive of the preceding clauses." Neufeld v. Wimbish, 2007 WL 1875965, at *2 (E.D.Cal. June 28, 2007) (quoting, *inter alia*, LaFarge Conseils et Etudes, S.A. v. Kaiser Cement, 791 F.2d 1334, 1338 (9th Cir. 1986)).  "Thus, if the circumstances alleged fall into any of the other subsections allowing set aside, then relief under subsection (6) can not be had."  Brown v. Eastman Kodak Company, 2000 WL 1732522, at *3 (Guam Terr. Nov. 27, 2000) (citing Klapprott v. United States, 335 U.S. 601, 613-14 (1948)).  Plainly because PageMasters is relying upon two "preceding clauses"

of Rule 60(b) – subsections (2) and (3) – it may not, as Océ is quick to point out, also rely upon the catch-all provision found in subsection (6).

Moreover, even if PageMasters was not relying upon any preceding clauses of Rule 60(b), it still would not be entitled to relief under subsection (6) of that Rule. "Judgments are not often set aside under Rule 60(b)(6)." Latshaw v. Trainer Wortham & Co., Inc., 452 F.3d 1097, 1103 (9th Cir. 2006). That is so because Rule 60(b)(6) "is used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." Id. (internal quotations and citations omitted). "Accordingly, a party who moves for such relief must demonstrate both injury and circumstances beyond his control that prevented [it] from proceeding with . . . the action in a proper fashion." Id. (internal quotation marks and citation omitted). PageMasters has shown neither. Therefore PageMasters cannot avail itself of Rule 60(b)(6) as a basis for setting aside summary judgment in Océ's favor.[6]

IT IS ORDERED that the Motion for Relief from Judgment by . . .

---

[6] Almost as an afterthought, in its Reply PageMasters argues that "Autodesk and Oce were not empowered to terminate PageMasters' right, without its consent, to an audit and accounts receivable." Reply (doc. 51) at 8. The court declines to consider this argument for two reasons. First, PageMasters has not set forth any procedural basis for it. Second, as already noted, without having the License Agreement before it, the court can only (improperly )speculate as to what that Agreement provided.

1 | plaintiff PageMasters, Inc. (doc. 45) is DENIED.
2 |     DATED this 11th day of September, 2007.
3 |
4 |
5 | _____
6 | Robert C. Broomfield
  | Senior United States District Judge
7 |
8 |
9 | Copies to counsel of record
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |